# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **SOUTHERN STAR EXPRESS, LLC,** | |
| **Plaintiff / Counterclaim Defendant,** | **Civil Action No. 5:19-cv-01423-DAE** |
| **vs.** | |
| **DORIAN J. PAGE** | |
| **Defendant / Counterclaim Plaintiff.** | |

## UNOPPOSED MOTION TO APPROVE THE
## SETTLEMENT AGREEMENT AND FOR ATTORNEYS' FEES AND COSTS,
## <u>AND MEMORANDUM OF LAW IN SUPPORT</u>

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................ 1

II.    PROCEDURAL HISTORY ........................................................................... 2

III.   THE TERMS OF THE SETTLEMENT AGREEMENT ................................ 4

      A.     Settlement Collective Members .......................................................... 4

      B.     Calculation and Distribution of the Net Settlement Amount ................ 5

      C.     Release of Claims .............................................................................. 6

      D.     Attorneys' Fees and Costs .................................................................. 7

IV.    DISCUSSION ............................................................................................... 7

      A.     Applicable Legal Standard .................................................................. 7

            1.     Legal Standard for Approval of FLSA Settlements ................... 7

      B.     The Terms of the Proposed Settlement Agreement are Fair and Reasonable Resolving a *Bona Fide* Dispute ........................................... 8

            1.     A *Bona Fide* Dispute Existed Between the Parties .................... 8

            2.     The Proposed Settlement Agreement is Fair and Reasonable ................... 9

            3.     The Allocation Formula is Fair and Reasonable ....................... 10

      C.     The Service Award and Retaliation Settlement Amount are Justified and Should be Approved .......................................................... 11

      D.     The Proposed Settlement Agreement Furthers the Purpose of the FLSA ............ 13

      E.     Final Certification of the Settlement Collective Pursuant to 29 U.S.C. § 216(b) is Appropriate .......................................................................... 13

      F.     The Request for Attorneys' Fees and Costs Should be Approved ........................ 14

            1.     The Fee Shifting Provision of the FLSA Provides for the Award of Attorneys' Fees ......................................................... 15

            2.     Time and Labor Required ....................................................... 16

            3.     Novelty and Difficulty of Question Presented by the Case, as Well as the Skill Required to Perform the Legal Service Properly ............................ 16

4.   Customary Fee and Awards in Similar Cases ........................................... 17

5.   Whether the Fee is Fixed or Contingent .................................................... 18

6.   Amount Involved and Results Obtained .................................................... 19

7.   Experience, Reputation, and Ability of the Attorneys ............................. 19

8.   The Undesirability of the Case ................................................................. 19

9.   Nature and Length of the Professional Relationship with the Clients ...... 19

G.   Counterclaim Plaintiff's Counsel's Expenses Should be Approved .................... 20

V.   CONCLUSION ................................................................................................................ 20

# I.    <u>INTRODUCTION</u>

Defendant / Counterclaim Plaintiff Dorian Page ("Counterclaim Plaintiff" or "Page") respectfully submits this Unopposed Motion to Approve the Settlement Agreement and for Attorneys' Fees and Costs, and Memorandum in Support (the "Motion") in the above-captioned action against Plaintiff / Counterclaim Defendant Southern Star Express, LLC ("Southern Star"). Southern Star wishes to keep the terms of the Settlement Agreement confidential and has filed a motion with the Court requesting leave to file it under seal for the Court's review. Counterclaim Plaintiff does not object to this request.

This case alleges that Southern Star failed to pay its Delivery Associates ("DAs") overtime compensation at the appropriate overtime rate when they worked more than 40 hours in a workweek, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Unlike a typical wage and hour case, this action was initiated by Southern Star when it filed a declaratory judgment action in this Court seeking to declare as valid an arbitration agreement allegedly binding Counterclaim Plaintiff Page. As discussed in detail below, Counterclaim Plaintiff filed an Answer and Counterclaims, asserting violations of the FLSA, including for overtime violations and retaliation. Following preliminary briefing, the Parties agreed to an Alternative Dispute Resolution ("ADR") process and engaged in extensive arm's-length settlement negotiations. After considerable negotiations and two full day Zoom mediation sessions before experienced mediator Dennis Clifford, Esquire, the Parties[1] were able to reach a collective settlement of this matter. *See* Declaration of Sarah R. Schalman-Bergen ("Schalman-Bergen Decl.") ¶ 9. The terms of the

---

[1] The term "Parties" includes Page, Southern Star, and Amazon.com, LLC and Amazon Logistics, Inc. (together, "Amazon"). While Amazon is not a named party in this litigation, it is a party to the Settlement Agreement, and Page has agreed to release all wage and hour claims against Amazon. For simplicity's sake, the term "Defendants" refers to both Southern Star and Amazon.

Parties' settlement are set forth in the Settlement Agreement ("Settlement Agreement").

The negotiated Settlement Agreement provides a reasonable settlement for Counterclaim Plaintiff and the Settlement Collective Members[2] with respect to their claims for allegedly unpaid overtime wages arising from Southern Star's alleged improper wage and hour practices at issue in this case, especially when taking into consideration the possibility that the Lawsuit, if not settled now, might not result in any recovery or might result in a recovery less favorable. *See* Schalman-Bergen Decl. ¶ 11. Counterclaim Plaintiff respectfully submits that this Motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for approval under federal law and falls well within the range of reasonableness. Pursuant to the terms of the Settlement Agreement, Defendants do not oppose this Motion.

Accordingly, Counterclaim Plaintiff respectfully requests that the Court issue an order: (1) approving the Agreement as a fair and reasonable compromise of a *bona fide* dispute, and (2) dismissing this action is in its entirety, with prejudice, subject to the terms of the Agreement.

## II.   <u>PROCEDURAL HISTORY</u>

On December 6, 2019, Southern Star filed the above-captioned declaratory judgment action seeking to declare as valid an arbitration agreement allegedly binding Page. (Dkt. No. 1.) On June 29, 2020, Counterclaim Plaintiff, a Delivery Associate ("DA") in Texas, filed a counterclaim against Southern Star, alleging that Southern Star failed to pay its DAs overtime compensation at the appropriate overtime rate when they worked more than 40 hours in a workweek, in violation of the FLSA. (Dkt. No. 11.) Counterclaim Plaintiff did not name Amazon as a party, as he had

---

[2] "Settlement Collective Members" means Counterclaim Plaintiff and all current and former Delivery Associates who were paid by Southern Star to deliver packages to customers of Amazon in the United States between October 2017 through March 31, 2019. There are approximately 838 Settlement Collective Members, and Counterclaim Plaintiff has relied on the records provided by Amazon and Southern Star in negotiating this Settlement. *See* Agreement ¶ 11(t).

entered into a prior agreement with Amazon for the benefit of himself and prospective Collective Members, which tolls the statutes of limitations on any FLSA and state law wage claims against Amazon. Counterclaim Plaintiff has sought to hold both Defendants liable for the wage violations alleged in his Counterclaim.

On July 20, 2020, Southern Star filed an Amended Complaint, reasserting its claim under the Declaratory Judgment Act, and adding claims under the Texas Arbitration Act, and claims for defamation and business disparagement. (Dkt. No. 15.) On August 24, 2020, Counterclaim Plaintiff filed a Partial Motion to Dismiss Southern Star's Amended Complaint, and also filed a Partial Amended Answer and Counterclaim, reasserting the collective-wide FLSA claim, and also alleging retaliation against Southern Star for bringing the state law counterclaims after Counterclaim Plaintiff pursued his rights under the FLSA. (Dkt. Nos. 20; 21.) Again, Counterclaim Plaintiff did not name Amazon as a party in light of the collective-wide tolling agreement, and he has sought to hold both Defendants liable for the wage violations alleged in his Counterclaim.

In October 2020, the Southern Star and Counterclaim Plaintiff agreed to stay this lawsuit so that the Parties could participate in an alternative dispute resolution process in an effort to resolve the claims at issue in this matter. Southern Star and Page filed a Motion to Stay with the Court on October 19, 2020, which the Court granted on October 20, 2020. (Dkt. Nos. 28; 29.)

On December 15, 2020, the Parties participated in a full day mediation (held virtually) with experienced mediator Dennis Clifford. Prior to the mediation, Counterclaim Plaintiff's counsel was provided with payroll data and delivery data (referred to as "Rabbit" data) for DAs who were employed and paid by Southern Star and delivered packages to customers of Amazon, which Page's counsel reviewed and analyzed extensively. The Parties did not reach resolution of the matter on December 15, 2020, and scheduled a second day of mediation for January 19, 2021,

again with experienced mediator Dennis Clifford. After another full day of mediation, the Parties reached resolution of this matter.

Counterclaim Plaintiff now presents the Settlement Agreement to the Court for its approval.[3] The Settlement Agreement offers significant advantages over the continued prosecution of this Lawsuit: Counterclaim Plaintiff and the DAs will receive reasonable financial compensation and will avoid the risks inherent in the continued prosecution of this case, in which Defendants assert various defenses to their liability. Schalman-Bergen Decl. ¶ 11. The Parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all Settlement Collective Members will be provided with notice of the Agreement and its terms.

## III.    THE TERMS OF THE SETTLEMENT AGREEMENT

### A.    Settlement Collective Members

There are approximately 838 Settlement Collective Members, which includes Counterclaim Plaintiff and all current and former Delivery Associates who were paid by Southern Star to deliver packages to customers of Amazon in the United States between October 2017 through March 31, 2019. *See* Agreement ¶ 11(t).

The Parties have stipulated that for settlement purposes only, certification of the Settlement Collective Members as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) is

---

[3] Courts generally do not require court approval for settlement of retaliation claims pursuant to 29 U.S.C. § 215(a)(3)). *See, e.g.*, *Yost v. Wyndham Vacation Resorts, Inc.*, No. 6:10-CV-1583-ORL-36, 2012 WL 1165598, at *3 (M.D. Fla. Mar. 26, 2012), *report and recommendation adopted,* No. 6:10-CV-1583-ORL-36, 2012 WL 1165468 (M.D. Fla. Apr. 9, 2012) (holding *Lynn's Foods* "only requires compromises of FLSA back wage or liquidated damage claims to be presented to the District Court for a determination of whether the proposed settlement is fair and reasonable" and "the Court does not need to review the parties' settlement of [p]laintiff's other claims, provided its terms do not serve to contaminate the Agreement as to the FLSA claim"). Counterclaim Plaintiff addresses the Retaliation Settlement Amount here, however, as the payment, while negotiated separately and distinct from payments to the Settlement Collective, is incorporated in the Settlement Agreement.

appropriate. *Id.* ¶ 9. Each Settlement Collective Member will be fully advised of this Settlement with the Notice of Settlement.

### B. Calculation and Distribution of the Net Settlement Amount

Pursuant to the Settlement Agreement, within thirty days after this Court approves this Proposed Settlement, Southern Star and Amazon will pay the Gross Settlement Amount into the Qualified Settlement Fund to be administered by the Settlement Administrator. Agreement ¶ 16. Defendants agree to separately pay the costs of settlement administration and the employer's share of payroll taxes. *Id.* ¶¶ 11(l); (r). The following amounts will be deducted from the Gross Settlement Amount to calculate the Net Settlement Amount, subject to Court approval: (i) amounts to Counterclaim Plaintiff Page as a Service Award and Retaliation Settlement Amount[4]; (ii) Counterclaim Plaintiff's Counsel's fees not to exceed one-third (1/3) of the Gross Settlement Amount, plus Counterclaim Plaintiff's Counsel's out-of-pocket costs; and (iii) an agreed upon Reserve Fund.[5] *Id.* ¶ 11(j).

The Net Settlement Amount will be distributed to the Settlement Collective under an allocation formula that credits individuals with settlement shares for each hour worked over forty

---

[4] The Settlement Agreement includes a Retaliation Settlement Amount for settlement of the retaliation claim asserted by Page against Southern Star. Courts generally do not require court approval of retaliation claims pursuant to 29 U.S.C. § 215(a)(3)). *See, e.g., Yost v. Wyndham Vacation Resorts, Inc.*, No. 6:10-CV-1583-ORL-36, 2012 WL 1165598, at *3 (M.D. Fla. Mar. 26, 2012), *report and recommendation adopted,* No. 6:10-CV-1583-ORL-36, 2012 WL 1165468 (M.D. Fla. Apr. 9, 2012) (holding *Lynn's Foods* "only requires compromises of FLSA back wage or liquidated damage claims to be presented to the District Court for a determination of whether the proposed settlement is fair and reasonable" and "the Court does not need to review the parties' settlement of [p]laintiff's other claims, provided its terms do not serve to contaminate the Agreement as to the FLSA claim"). Counterclaim Plaintiff addresses the Retaliation Settlement Amount in this Motion, however, as the payment, while negotiated separately and distinct from payments to the Settlement Collective, is incorporated in the Agreement.

[5] The Settlement Administrator will set aside a Reserve Fund from the Gross Settlement Amount to account for any potential disputed, belated, or unexpected payments to Settlement Collective Members after Settlement Awards have been issued during the 180-day Check Cashing Period.

(40) per week during the Relevant Time Period, and which provides for a minimum payment to each Settlement Collective Member. *See* Agreement ¶ 22(a)-(b) (describing the allocation formula). All Settlement Award checks issued to Settlement Collective Members will be valid and negotiable for 180 days from the issue date and will be accompanied by the Notice of Settlement. *Id.* ¶ 27. A reminder letter will be distributed via U.S. mail and email to those who have still not cashed their check after 60 days. *Id.* Any amounts from uncashed settlement checks remaining after the 180 days will be paid back to Defendants in recognition of the fact that those individuals who do not cash their settlement checks do not release any claims against Defendants. *Id.*

## C.  <u>Release of Claims</u>

In exchange for settlement benefits, Settlement Collective Members who sign, deposit and/or cash their Settlement Award agree not to sue the Released Parties for the Released Claims.[6] Agreement ¶¶ 11(m)(n); 12. In addition, in consideration for his Service Award and Retaliation Settlement Amount, Counterclaim Plaintiff has agreed to provide a broader release of claims. *Id.* ¶ 7. Finally, Southern Star agrees to release any claims for declaratory relief against Counterclaim Plaintiff as well as the claims for defamation, business disparagement, and any other claims that were asserted or could have been asserted against Counterclaim Plaintiff or his counsel. *Id.* ¶ 13. Settlement Collective Members who do not sign, deposit and/or cash their Settlement Award will not release any claims against Defendants, and Southern Star and Amazon have agreed that the Settlement Agreement may not be used to assert collateral estoppel, *res judicata*, waiver or any other claim preclusion of FLSA claims with respect to individuals who did not specifically release

---

[6] "Released Claims" means any and all FLSA claims (and related wage claims) that accrued to the Settlement Collective Members while working for Southern Star at any time between October 2017 and March 31, 2019, including, without limitations, all FLSA claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses. *Id.* ¶ 11(m).

those FLSA claims. *Id.* ¶¶ 11(m)(n); 12.

### D. **Attorneys' Fees and Costs**

Pursuant to the Settlement Agreement, Counterclaim Plaintiff's Counsel will receive attorneys' fees not to exceed one-third (1/3) of the Gross Settlement Amount, which will compensate Counterclaim Plaintiff's Counsel for all work performed in the Lawsuit as of the date of the Settlement Agreement as well as all of the work remaining to be performed, including, but not limited to, documenting the settlement, securing Court approval of the Settlement Agreement, and making sure that the Settlement Agreement is fairly administered and implemented. In addition, the Settlement Agreement provides that Counterclaim Plaintiff's Counsel shall receive reimbursement of their out-of-pocket costs, not to exceed $15,000. *Id.* ¶(j).

## IV. **DISCUSSION**

Counterclaim Plaintiff respectfully requests that the Court enter the accompanying proposed order approving the Settlement.

### A. **Applicable Legal Standard**

#### 1. **Legal Standard for Approval of FLSA Settlements**

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Romero v. Levya*, No. 1:19-CV-683-RP, 2020 WL 1958639, at *2 (W.D. Tex. Apr. 23, 2020) (quoting *Trevino v. Colt Oilfield Servs., LLC*, No. 5-18-CV-01304-FB-RBF, 2019 WL 3816302, at *1–2 (W.D. Tex. May 6, 2019); *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)). "A reviewing court must determine that a settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Id.* (citing *Alaniz v. Maxum Petroleum Operating Co., Inc.*, No. SA-15-CV-00373-XR, 2016 WL 6462206, at *1 (W.D. Tex. Oct. 31, 2016)); *Graham v. Jet Specialty, Inc.*, No. MO-15-CV-135-

DAE, 2016 WL 7479956, at *1 (W.D. Tex. May 11, 2016) (Ezra, J.) ("[P]arties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due. A release of a party's rights under the FLSA is enforceable under such circumstances.") (*quoting Martinez v. Bohls Bearing Equip. Co.,* 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005)).

To approve a FLSA settlement, the Court must determine whether: (1) the litigation involves a *bona fide* dispute; and (2) the proposed settlement fairly and reasonably resolves the dispute. *See Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-00603-RP, 2015 WL 12866212, at *2 (W.D. Tex. Dec. 23, 2015); *Jones v. JGC Dallas, LLC*, No. 3:11-cv-2743-O, 2014 WL 7332551, at *3 (N.D. Tex. Nov. 12, 2014).

As set forth below, the proposed Settlement Agreement in this case falls well within the range of possible approval, because it meets each of the requirements of substantive and procedural fairness. In addition, the proposed Settlement Agreement meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute that furthers the purpose of the FLSA. As such, there are no grounds to doubt the reasonableness of the Settlement Agreement.

**B.     The Terms of the Proposed Settlement Agreement are Fair and Reasonable Resolving a *Bona Fide* Dispute**

**1.     A *Bona Fide* Dispute Existed Between the Parties**

Courts look to "whether there exists a bona fide dispute" under the FLSA regarding the amount of hours worked or compensation due. *Martinez*, 361 F. Supp. 2d at 631. Here, with regard to the wage claims at issue, the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following:

1)     the appropriate rate at which overtime should be paid when DAs worked more than forty (40) hours per week (i.e., half-time or time-and-one-half the

regular rate);

2)      whether Southern Star would be able to meet its burden of demonstrating good faith, such that it would avoid the imposition of liquidated damages;

3)      whether Amazon could be held liable for the alleged pay violations as a joint employer;

4)      whether Counterclaim Plaintiff and the other DAs were subject to binding and enforceable arbitration agreements;

5)      whether Counterclaim Plaintiff could obtain and maintain a collective action status of the action; and

6)      whether the Parties would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages.

*See* Schalman-Bergen Decl. ¶ 13.

Ultimately, the Gross Settlement Amount that was agreed upon represents a compromised resolution on these issues, accounts for the risks of litigation, and provides certain, immediate and meaningful payment for the workers in this case for the time period at issue. *Id.*

## 2.      The Proposed Settlement Agreement is Fair and Reasonable

Because the Fifth Circuit has not definitively set out FLSA specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the same factors used in evaluating the fairness of class action settlements under Fed. R. Civ. P. 23. *See Dyson v. Stuart Petroleum Testers, Inc.*, No. 1-15-cv-282-RP, 20016 WL 815355, at *2-3 (W.D. Tex. Feb. 29, 2016) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)). These factors are: 1) whether the settlement was a product of fraud or collusion; 2) the complexity, expense, and likely duration of the litigation; 3) the stage of the proceedings and the amount of discovery completed; 4) the factual and legal obstacles to prevailing on the merits; 5) the possible range of recovery and the certainty of damages; and 6) the respective opinions of the participants, including class counsel, class representative, and the absent class members. *Parker*,

667 F.2d at 1209.

The Gross Settlement Amount provides Counterclaim Plaintiff and the Settlement Collective Members with the recovery of unpaid overtime hours worked, and it was carefully negotiated based on factual discovery, a substantial investigation by the Parties, and the review and analysis of documents and payroll produced to Counterclaim Plaintiff. The Gross Settlement Amount is based on an analysis of overtime hours that the Settlement Collective Members worked for Southern Star during the Relevant Time Period, as determined from the records provided. If the Settlement Agreement is approved, all Settlement Collective Members will receive a settlement award check, but only those Settlement Collective Members who sign, deposit and/or cash their Settlement Award will release claims against the Released Parties.

### 3.    The Allocation Formula is Fair and Reasonable

The proposed allocation formula is fair and reasonable and should be approved. *See In re Dell*, No. A–06–CA–726–SS, 2010 WL 2371834, at *10 (W.D. Tex. June 11, 2010) ("The allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel.") (quoting *In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 429–30 (S.D.N.Y.2001) (citations omitted)).

Under the proposed allocation formula, each Settlement Collective Member will receive a minimum amount. In addition to the minimum payment, Settlement Collective Members will receive a *pro rata* portion of the Net Settlement Amount calculated as follows: for each overtime hour during which Southern Star recorded the Settlement Collective Member as working over forty (40) hours in the Relevant Time Period, the Settlement Collective Member shall receive one (1) settlement share. The total number of settlement shares for all Settlement Collective Members will then be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Settlement Collective

Member's number of settlement shares to determine the Settlement Collective Member's Settlement Award. *See* Agreement ¶¶ 22(a)-(b).

When, in comparison to the proposed Settlement Agreement, proceeding with litigation would require a substantial amount of time to yield a benefit to the Settlement Collective Members, it is an indication that the proposed settlement is fair, reasonable, and adequate. In the instant case, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

The Settlement Agreement was the result of contested litigation, factual discovery, and arm's-length negotiations. Schalman-Bergen Decl. ¶ 12. The proposed Settlement Agreement was only reached after Southern Star and Plaintiff engaged in motion practice, the Parties exchanged substantial mediation related informal discovery, and conducted two full days of Zoom mediation. *Id.* As described above, Counterclaim Plaintiff's Counsel extensively investigated the applicable law, the relevant facts discovered in this action, and the potential defenses thereto. The Gross Settlement Amount is based on an intensive review of the facts and law. *Id.* The proposed Settlement Agreement is the product of careful factual and legal research and arm's-length negotiations between the Parties.

C.    **The Service Award and Retaliation Settlement Amount are Justified and Should be Approved**

Pursuant to the Settlement Agreement, Southern Star has agreed to pay Counterclaim Plaintiff Page a Service Award and Retaliation Settlement Amount as forth in the Settlement Agreement for his efforts in bringing and prosecuting this matter and for his additional release of retaliation claims. Agreement ¶¶ 11(j); 11(q); 17; 25. Subject to Court approval, these amounts will be paid to Counterclaim Plaintiff in addition to his Settlement Award check.

"Federal courts consistently approve incentive awards in class action lawsuits to

compensate named plaintiffs for the services they provide and burdens they shoulder during litigation." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 339–40 (W.D. Tex. 2007) (quoting *Camp v. Progressive Corp.*, No. Civ. A. 01–2680, Civ. A. 03–2507, 2004 WL 2149079, at *8 (E.D. La. Sept. 23, 2004) (internal quotation omitted); *see also Cunningham v. Kitchen Collection, LLC*, No. 4:17-CV-770, 2019 WL 2865080, at *3 (E.D. Tex. July 3, 2019) ("Service awards to class representatives are permissible where they are fair and reasonable.") (internal quotation omitted); *Carrabba v. Randalls Food Mkts., Inc.*, 191 F. Supp. 2d 815, 835 (N.D. Tex. 2002) (recognizing practice of compensating named representatives in class action suits). It is particularly appropriate to compensate named representative plaintiffs with service awards where they have actively assisted counsel in their prosecution of the litigation for the benefit of a class.

Here, the proposed Service Award payment is justified by the benefit that Counterclaim Plaintiff has brought to the Settlement Collective. Mr. Page took significant risks in coming forward to represent the interests of his fellow workers, including risking his reputation in the community and in his field of employment, in order to participate in this case on behalf of the Settlement Collective. Schalman-Bergen Decl. ¶ 14. Mr. Page worked with Counsel, providing background information about his employment, providing information about Defendants' policies and practices, providing information to support the allegations in the Lawsuit, and attending mediation in this matter. *Id.*; *see Carrabba*, 191 F. Supp. 2d at 835*; see Frank*, 228 F.R.D. at 187 (noting that service awards are especially appropriate in employment litigation where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."); *see also Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding

that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation").

Moreover, to the extent required, Counterclaim Plaintiff's Retaliation Settlement Amount should be approved. The Retaliation Settlement Amount was negotiated separately from the Settlement Collective Members' damages, and it represents a compromise of a *bona fide* dispute over whether Southern Start retaliated against Mr. Page in violation of the anti-retaliation provisions of the FLSA (29 U.S.C. § 215(a)(3)) by asserting retaliatory state law claims for defamation and business disparagement against Mr. Page after Mr. Page pursued his rights under the FLSA. Schalman-Bergen Decl. ¶ 15. For these reasons, the additional payments to Counterclaim Plaintiff Page should be approved as fair and reasonable.

### D. The Proposed Settlement Agreement Furthers the Purpose of the FLSA

The Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. Indeed, the settlement furthers the purposes of the FLSA by providing the Settlement Collective with reasonable recovery for their alleged unpaid overtime, that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Importantly, all Settlement Collective Members will receive a Settlement Award. Because the Settlement Agreement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

### E. Final Certification of the Settlement Collective Pursuant to 29 U.S.C. §

**216(b) is Appropriate**

Courts in this Circuit do not always require final certification of FLSA collectives pursuant to 29 U.S.C. § 216(b) for purposes of settlement. *See, e.g.*, *Vassallo v. Goodman Networks, Inc.*, No. 15CV97-LG-CMC, 2016 WL 6037847, at *1 (E.D. Tex. Oct. 14, 2016) ("Final certification of a collective action is not necessary prior to approval of a FLSA settlement.") (citing *In re Wells Fargo Wage & Hour Emp't Practices Litig.* (*No. III*), 18 F. Supp. 3d 844, 853 (S.D. Tex. 2014)). The Parties here have agreed, however, that for settlement purposes only, certification of the Settlement Collective Members as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) is appropriate. Agreement ¶ 9. Accordingly, the Court should also finally certify the Settlement Collective under 29 U.S.C. § 216(b).

Counterclaim Plaintiff asserts, and the Defendants do not challenge for settlement purposes only, the Settlement Collective Members are "similarly situated" for settlement purposes because (1) DAs worked under the same conditions and compensation policies; (2) were subject to the same alleged unlawful practices in that they worked more than 40 hours per week but, Counterclaim Plaintiff alleges, did not receive proper overtime compensation; and (3) the same defenses apply to all Members since Defendants deny the allegations in this Lawsuit with respect to all DAs. Further fairness and procedural concerns counsel in favor of final certification, which will enable the Settlement Collective Members the option to receive compensation for their unpaid wage and hour overtime without the need to file individual actions. Plaintiff's Counsel has settled similar cases involving Amazon and third-party delivery companies, which have been approved by federal district courts as fair and reasonable. *See, e.g., Gaines v. Amazon.Com, LLC*, 1:19-cv-00528-WMR (N.D. Ga. June 22, 2020) (ECF 72) attached as Exhibit 3. Accordingly, collective action treatment pursuant to 29 U.S.C. § 216(b) is appropriate for purposes of settlement.

F.     **The Request for Attorneys' Fees and Costs Should be Approved**

1. **The Fee Shifting Provision of the FLSA Provides for the Award of Attorneys' Fees**

A plaintiff in an FLSA case may recover his/her attorneys' fees and expenses under the statute's fee-shifting provision. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Steele v. Leasing Enter., Ltd.*, 826 F.3d 237, 249 (5th Cir. 2016) (award of attorney's fees under Section 216(b) of the FLSA is mandatory); *Riddle v. Tex-Fin., Inc.*, No. H-08-3121, 2011 WL 1103033, at *5 (S.D. Tex. Mar. 22, 2011).

In common fund cases, district courts in the Fifth Circuit have examined a motion for attorneys' fees under one of two methods – lodestar or percentage method. *In re Heartland Payment Sys., Inc. Customer Data Breach Litig.*, 851 F. Supp. 2d 1040, 1071 (S.D. Tex. 2012) (citing *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012); *In re Dell*, 2010 WL 2371834, at *12. While the Fifth Circuit has not expressly adopted the percentage method over the lodestar method for common fund lawsuits, it has "recognized that the percentage method is the preferred method of many courts." *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd., No*. 3:09-CV-0298-N, 2016 WL 8201334, at *2 (N.D. Tex. Aug. 30, 2016). "The percentage method is appropriately reviewed under the framework set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) to determine whether the fee is reasonable." *Dyson*, 2016 WL 815355, at *4. Here, as part of the negotiations that led to the Settlement Agreement, Defendants agreed not to object to an award of one-third (1/3) of the Gross Settlement Amount for attorneys' fees.

In determining what constitutes a reasonable percentage fee award in the Fifth Circuit, a district court considers the following factors: (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4)

preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Dyson*, 2016 WL 815355 at *5.

These factors support approval of the requested fee and are discussed below.

### 2. Time and Labor Required

The Fifth Circuit recognizes that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions. *See In re Dell*, 2010 WL 2371834 at *12; *Union Asset Mgmt.*, 669 F.3d at 644. Nonetheless, prosecuting this matter to a successful settlement for the benefit of Counterclaim Plaintiff and the Settlement Collective Members required Counterclaim Plaintiff's Counsel to expend a significant amount of time by attorneys, as contemplated by factors 1 and 7 above. Specifically, Counterclaim Plaintiff's Counsel conducted substantial legal and factual research; briefed numerous motions during litigation; exchanged, reviewed, and analyzed data for mediation; and prepared for and attended two full-day mediation sessions. Schalman-Bergen Decl. ¶¶ 18-32. The time and labor expended support the requested fee. In fact, the total requested fee amount is significantly less than the fees actually incurred by Counterclaim Plaintiff's Counsel as of March 26, 2021, and not including all of the work remaining to be performed to bring the case to a conclusion. *Id.* ¶ 26; *see also* Declarations of William Hommel and Ryan Allen Hancock. This factor supports the fee request.

### 3. Novelty and Difficulty of Question Presented by the Case, as Well as the Skill Required to Perform the Legal Service Properly

There are numerous disputed issues of fact and law, including, specifically, whether

Counterclaim Plaintiff and the Settlement Collective Members were paid overtime compensation at the proper rate. Defendants denied all of the allegations, denied that they are liable or owe damages, and contend that Counterclaim Plaintiff was subject to individual binding arbitration such that collective action certification could never be possible. Because Defendants had potentially strong legal and factual defenses to Counterclaim Plaintiff's claims, even if Counterclaim Plaintiff were able to obtain and maintain certification in the action, an outcome of zero recovery for Counterclaim Plaintiff and the Settlement Collective Members remained possible. This factor also supports Counterclaim Plaintiff's Counsel's fee request.

The wage and hour issues in this Lawsuit are governed by the highly technical FLSA and federal regulations. Counterclaim Plaintiff's Counsel focus their practices in this highly technical area and have litigated numerous cases under these wage and hour laws on both an individual and class/collective action basis. Counterclaim Plaintiff's Counsel thus had the requisite skill to perform the legal services required in this complex litigation.

### 4.    Customary Fee and Awards in Similar Cases

The Fifth Circuit has noted that fee awards generally ranging from 35% to 40% are common in cases taken on a contingent fee basis. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001); *see also Bryant v. United Furniture Indust., Inc.*, No. 1:13-CV-246, 2017 WL 639320, at *4 (N.D. Miss. Feb. 16, 2017) ("awards commonly fall between a lower end of 20% and an upper end of 50%"); *Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins., Nos.* 89-cv-822, CIV 89-cv-1186, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.").

Here, Counterclaim Plaintiff's Counsel seeks one-third (1/3) of the Gross Settlement Amount as fees. As described above, this is well within the percentage range approved in similar

cases, and is, in fact, lower than many fee awards approved in this District. *See e.g. Bryant*, 2017 WL 639320 at \*4 (approving 40% attorneys' fee award from a common fund settlement). Thus, the customary fee factor supports the requested fee award.

### 5. Whether the Fee is Fixed or Contingent

Counterclaim Plaintiff's Counsel agreed to represent Counterclaim Plaintiff on a contingency fee basis. *See* Schalman-Bergen Decl. ¶ 16. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Id.*

In this case, Counterclaim Plaintiff's Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial. This factor thus weighs in favor of the requested fees because Counterclaim Plaintiff's Counsel assumed significant risk of nonpayment when they agreed to represent Counterclaim Plaintiff on a contingency fee basis. *See DeHoyos*, 240 F.R.D. at 330. By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. Counterclaim Plaintiff's Counsel's contingency risk, together with the excellent result that has been achieved on behalf of Counterclaim Plaintiff and the Settlement Collective Members, supports the requested fees and costs.

### 6. Amount Involved and Results Obtained

Here, and as described above, the Gross Settlement Amount represents a significant recovery on behalf the Settlement Collective Members in light of the known risks of the case. For instance, Southern Star argued that the Settlement Collective were properly paid overtime compensation; and have contended that Counterclaim Plaintiff was subject to individual binding arbitration such that collective action certification could never be possible. In sum, the Settlement represents a positive result given the circumstances of the Lawsuit and, thus, the "amount involved and results obtained" factor supports the proposed fee award.

### 7. Experience, Reputation, and Ability of the Attorneys

As is described in detail in the declaration submitted herewith, Counterclaim Plaintiff's Counsel have shown their ability by achieving the positive result obtained for Mr. Page and the Settlement Collective. The experience, reputation, and ability of Counterclaim Plaintiff's Counsel therefore, supports the requested fee award. *See* Schalman-Bergen, Hommel and Hancock Declarations.

### 8. The Undesirability of the Case

Counterclaim Plaintiff's Counsel undertook significant risk in agreeing to represent Counterclaim Plaintiff. The risk assumed by Counterclaim Plaintiff's Counsel is similar to that recognized by district courts in the Fifth Circuit. *See Garza v. Sporting Goods Properties, Inc.*, No. SA-93-CA-108, 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996) ("Factors [ ] such as the financial burden on counsel and the demands of handling a class action of the size and complexity as set forth, may cause a case to be considered 'undesirable.'") (internal citations omitted).

### 9. Nature and Length of the Professional Relationship with the Clients

Representing employees in wage and hour matters are different than defense firms which have a steady book of corporate clientele. Typically, defense firms' clients require continuous legal

services from their counsel. Comparatively, it is unlikely that many plaintiffs will be seeking additional representation from a plaintiffs' counsel after the conclusion of a lawsuit. The wage claims asserted in this Lawsuit do not lend themselves to continuous, long-term attorney-client relationships. This factor thus weighs in favor of the requested fee award.

### G. Counterclaim Plaintiff's Counsel's Expenses Should be Approved

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b). "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 210 F.R.D. 508, 535 (E.D. Mich. 2003).

Counterclaim Plaintiff's Counsel's expenses incurred in this Lawsuit are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as mediation fees, court costs, copying fees, delivery costs, and computerized legal research. Schalman-Bergen Decl. ¶¶ 34-35. All of these expenses were reasonable and necessary for the successful prosecution of this Lawsuit.

### V. CONCLUSION

Counterclaim Plaintiff respectfully requests that the Court issue an order: (1) approving the Settlement Agreement as a fair and reasonable compromise of a *bona fide* dispute; and (2) dismissing this action is in its entirety, subject to the terms of the Settlement Agreement.

Dated: March 26, 2021                    Respectfully submitted,

   /s Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen
Texas Federal Bar ID No. 2330780
Krysten Connon
LICHTEN & LISS-RIORDAN PC
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
Direct: (267) 256-9973
Main: (617) 994-5800
Fax: (617) 994-5801
ssb@llrlaw.com
kconnon@llrlaw.com

William S. Hommel, Jr.
HOMMEL LAW FIRM
5620 Old Bullard Road, Suite 115
Tyler, TX 75703

Ryan Allen Hancock
WILLIG, WILLIAMS, & DAVIDSON
1845 Walnut Street 24th Floor
Philadelphia, PA 19103

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed on the ECF docket and is available for viewing and download on this 26th day of March, 2021.

s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen