IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| SOUTHERN STAR EXPRESS, LLC,<br><br>        Plaintiff / Counterclaim Defendant,<br><br>vs.<br><br>DORIAN J. PAGE,<br><br>        Defendant / Counterclaim Plaintiff. | Civil Action No. 5:19-CV-01423-DAE |

**DECLARATION OF SARAH R. SCHALMAN-BERGEN
IN SUPPORT OF COUNTERCLAIM PLAINTIFF'S UNOPPOSED MOTION TO
APPROVE THE SETTLEMENT AGREEMENT AND
<u>ATTORNEYS' FEES AND COSTS</u>**

I, Sarah R. Schalman-Bergen, hereby declare that the following is true and correct:

1. I am a member in good standing of the bar of the Commonwealth of Pennsylvania, and I am admitted to this Court, Texas Federal Bar ID No. 2330780. I am a partner at Lichten & Liss-Riordan PC and along with the Hommel Law Firm and Willig, Williams & Davidson, represent Counterclaim Plaintiff and the Settlement Collective in the above-captioned litigation. I submit this declaration in support of Counterclaim Plaintiff's Unopposed Motion to Approve the Settlement Agreement and Attorneys' Fees and Costs. I have personal knowledge of the information set forth herein.

2. Lichten & Liss-Riordan, P.C. is a nationally recognized law firm dedicated to vindicating the rights of workers. The firm has pioneered the law on behalf of tipped employees who have been deprived of their gratuities, or the proceeds of service charges, in states throughout the country, including Massachusetts, New York, Florida, Hawaii, and California. It has brought landmark litigation on behalf of Uber drivers, as well as workers for other so-called "gig economy"

companies, and it has established and won numerous cases on behalf of workers who have been misclassified as independent contractors throughout the country, in a wide variety of industries, including the trucking, limo, cleaning, adult entertainment, cable installer, and call center industries.

3. I became a partner at Lichten & Liss-Riordan, P.C. in January 2021. I have dedicated my career to creating systemic change for workers and individuals who are not being treated fairly. I have secured numerous significant settlements for the workers I represent, totaling well over $100 million. While representing workers in all types of industries, I have successfully challenged unlawful business practices involving last-mile logistics companies, cable installation companies, home health aide companies, meat and poultry plants, landscaping companies, in white collar jobs, and in the government. This litigation has resulted both in payment of back wages and in practice changes by the companies.

4. I am barred in Pennsylvania, and I am admitted to practice in the U.S. Supreme Court; U.S. Court of Appeals for the Third, Fourth, Sixth, Eighth and Ninth Circuits; U.S. District Courts for the Eastern, Middle, and Western Districts of Pennsylvania, District of Colorado, Eastern and Western Districts of Arkansas, Northern District of New York, Northern District of Illinois, Southern District of Indiana, Northern District of Ohio, Eastern District of Michigan, District of Nebraska, Western District of Tennessee, Southern, Western and Eastern Districts of Texas; and the U.S. Bankruptcy Court for the Eastern District of Pennsylvania.

5. I am a 2007 graduate of Harvard Law School, where I graduated *cum laude*. I routinely speak at conferences on issues relating to workers' rights. I currently serve on Cornell's ILR-Hotel School CIHLER Advisory Board, and is a Board Member of the Keystone Research Center. I was named a 2020 Pennsylvania Super Lawyer, after being named as a Rising Star in

every year over the prior decade. In 2021, I was named in Best Lawyers in America. In 2015, I was honored as a "Lawyer on the Fast Track" by The Legal Intelligencer. In 2010, I was honored as an "Unsung Hero" by the Legal Intelligencer, Pennsylvania's daily law journal, for my *pro bono* work.

6. Prior to joining Lichten & Liss-Riordan, P.C., I was a Shareholder at Berger Montague PC, where I served as Co-Chair of the Employment Rights Department. Berger Montague specializes in class action litigation in federal and state courts and is one of the preeminent class action law firms in the United States. Berger Montague's Employment Department has considerable experience representing employees in class action and collective action litigation. Berger Montague has played lead roles in major class action cases for over 48 years, resulting in recoveries totaling many billions of dollars for the clients and the classes they represent.

7. I served as lead counsel in this matter, and have represented delivery associates in litigation involving Delivery Service Providers (such as Southern Star Express, LLC) for Amazon since 2017. *See, e.g., Hickman v. TL Transportation, LLC, Amazon.com, et al.*, No. 2:17-cv-01038, (E.D. Pa.); *Green v. Amazon.com, et al.*, No. 1:18-cv-1032 (M.D.N.C.); *Gaines v. Amazon.com, LLC*, et al., No. 1:19-cv-00528-WMR (N.D. Ga.); *Gongaware v. Amazon.com, et al.*, No. 1: 18-cv- 08358 (N.D. Ill.); *Thomas v. JSTC, LLC et al.*, No. 6:19-cv-01528-RBD-GJK (M.D. Fla.); *Huskey v. Amazon.com, LLC, Synctruck, LLC*, No. 2:20-cv-01869-WBS-DB (E.D. Cal.).

8. I litigated this matter with the Hommel Law Firm and Willig, Williams & Davidson while at Berger Montague and at Lichten & Liss-Riordan. I supervised and directed the work of all attorneys at Berger Montague on this matter while I worked at Berger Montague, and similarly

have supervised and directed the work of all attorneys at Lichten & Liss-Riordan since changing law firms.

## RELEVANT SETTLEMENT BACKGROUND

9. This case alleges that Southern Star failed to pay its Delivery Associates ("DAs") overtime compensation at the appropriate overtime rate when they worked more than 40 hours in a workweek, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). Unlike a typical wage and hour case, this action was initiated by Southern Star when it filed a declaratory judgment action in this Court seeking to declare as valid an arbitration agreement allegedly binding Counterclaim Plaintiff Page. Counterclaim Plaintiff filed an Answer and Counterclaims, asserting violations of the FLSA, including for overtime violations and retaliation. Following preliminary briefing, the Parties agreed to an Alternative Dispute Resolution ("ADR") process and engaged in extensive arm's-length settlement negotiations. After considerable negotiations and two full day Zoom mediation sessions before experienced mediator Dennis Clifford, Esquire, the Parties were able to reach a collective settlement of this matter.

10. While Amazon is not a named party in this litigation, it is a party to the Settlement Agreement, and Page has agreed to release all wage and hour claims against Amazon.

11. The negotiated Settlement Agreement provides a reasonable settlement for Counterclaim Plaintiff and the Settlement Collective Members with respect to their claims for allegedly unpaid overtime wages arising from Southern Star alleged improper wage and hour practices at issue in this case, especially when taking into consideration the possibility that the Lawsuit, if not settled now, might not result in any recovery or might result in a recovery less favorable. The Settlement Agreement offers significant advantages over the continued prosecution of this Lawsuit: Counterclaim Plaintiff and the DAs will receive reasonable financial

compensation and will avoid the risks inherent in the continued prosecution of this case, in which Defendants assert various defenses to their liability.

12. The Settlement Agreement was the result of contested litigation, factual discovery, and arm's-length negotiations. The proposed Settlement Agreement was only reached after Southern Star and Counterclaim Plaintiff engaged in motion practice, the Parties exchanged substantial mediation related informal discovery, and conducted two full days of Zoom mediation. Counterclaim Plaintiff's Counsel extensively investigated the applicable law, the relevant facts discovered in this action, and the potential defenses thereto. The Gross Settlement Amount is based on an intensive review of the facts and law.

13. Here, with regard to the wage claims at issue, the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following: a) the appropriate rate at which overtime should be paid when DAs worked more than forty (40) hours per week (i.e., half-time or time-and-one-half the regular rate); b) whether Southern Star would be able to meet its burden of demonstrating good faith, such that it would avoid the imposition of liquidated damages; c) whether Amazon could be held liable for the alleged pay violations as a joint employer; d) whether Counterclaim Plaintiff and the other DAs were subject to binding and enforceable arbitration agreements; e) whether Counterclaim Plaintiff could obtain and maintain a collective action status of the action; and f) whether the Parties would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages. Ultimately, the Gross Settlement Amount that was agreed upon represents a compromised resolution on these issues, accounts for the risks of litigation, and provides certain, immediate and meaningful payment for the workers in this case for the time period at issue.

14. The proposed Service Award payment is justified by the benefit that Counterclaim Plaintiff has brought to the Settlement Collective. Mr. Page took significant risks in coming forward to represent the interests of his fellow workers, including risking his reputation in the community and in his field of employment, in order to participate in this case on behalf of the Settlement Collective. Mr. Page worked with Counsel, providing background information about his employment, providing information about Defendants' policies and practices, providing information to support the allegations in the Lawsuit, and attending mediation in this matter.

15. Moreover, to the extent required, Counterclaim Plaintiff's Retaliation Settlement Amount should be approved. The Retaliation Settlement Amount was negotiated separately from the Settlement Collective Members' damages, and it represents a compromise of a *bona fide* dispute over whether Southern Start retaliated against Mr. Page in violation of the anti-retaliation provisions of the FLSA (29 U.S.C. § 215(a)(3)) by asserting retaliatory state law claims for defamation and business disparagement against Mr. Page after Mr. Page pursued his rights under the FLSA.

16. Counterclaim Plaintiff's Counsel agreed to represent Counterclaim Plaintiff on a contingency fee basis. In this case, Counterclaim Plaintiff's Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial.

17. A plaintiffs-side contingency practice, in which we are able to steadfastly fight legal battles that extend for years, attempting to advance the rights of low wage workers who could not afford to pay out-of-pocket for counsel, is made possible by the nature of contingency fee work.

18. Prosecuting this matter to a successful settlement for the benefit of Counterclaim Plaintiff and the Settlement Collective Members required Counterclaim Plaintiff's Counsel to expend a significant amount of time by attorneys. Specifically, Counterclaim Plaintiff's Counsel

conducted substantial legal and factual research; briefed numerous motions during litigation; exchanged, reviewed, and analyzed data for mediation; and prepared for and attended two full-day mediation sessions. The time and labor expended support the requested fee.

## TOTAL LODESTAR OF ATTORNEY WORK INCURRED UNDER MY DIRECT SUPERVISION

19. As discussed above, I directed the work on this matter both while I served as Co-Chair of the Employment Rights Department at Berger Montague PC and in my role as a partner at Lichten & Liss-Riordan.

20. I have reviewed the declarations of William Hommel and Ryan Hancock submitted in connection with this filing.

21. In my exercise of billing judgment, I have reviewed the billing records maintained in this case by Berger Montague and Lichten & Liss-Riordan, and I have exercised billing discretion and removed hours spent by attorneys and staff at my firm if I deemed such time to be redundant or duplicative, or if it reflected less than ten (10) hours of work by the biller. After the exercise of such billing judgment, as of March 26, 2021, the total number of recorded hours spent on this litigation by Berger Montague is 496.8, and the total number of recorded hours spent on this litigation by Lichten & Liss-Riordan is 78.4.

22. The hourly rates shown below are the usual and customary rates charged for each individual in Berger Montague's cases. A breakdown of Berger Montague's lodestar from inception of the case to date is reflected below:

| Name | Position | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Sarah R. Schalman-Bergen | Former Shareholder | 64 | $645 | $41,280 |
| Krysten L. Connon | Former Associate | 211.4 | $485 | $102,529 |
| Phyllis Parker | Shareholder | 67.3 | $670 | $45,091 |
| Alexandra Piazza | Associate | 54.4 | $520 | $28,288 |
| Deanna Kemler | Data Analyst & Paralegal | 74.8 | $350 | $26,180 |

7

| Stefana Klipa | Paralegal | 24.9 | $300 | $7,470 |
|---|---|---|---|---|
| **Total** | | **496.8** | | **$250,838** |

23. A breakdown of Lichten & Liss-Riordan's lodestar from January 1, 2021 to date, utilizing the same hourly rates that Ms. Connon and I utilized while at Berger Montague is reflected below:

| Name | Position | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Sarah R. Schalman-Bergen | Shareholder | 52.3 | $645 | $33,733.50 |
| Krysten L. Connon | Associate | 26.1 | $485 | $12,658.50 |
| **Total** | | **78.4** | | **$46,392** |

24. The hourly rates for the partners, attorneys, and professional staff at Berger Montague are the same as would be charged in non-contingent matters and/or which have been accepted and approved by federal courts around the country in other wage and hour class and collective action cases. *See e.g.*, *Merino et al. v. Wells Fargo & Company et al.*, No. 2:16-cv-07840-ES-MAH (D.N.J. Jan. 15, 2020); *Brewer v. Homeland Vinyl Products, Inc.*, No. 1:17-cv-04290-NLH-KMW (D.N.J. Sept. 10, 2019); *Holbert v. Waste Management, Inc.*, No 2:18-cv-02649-CMR (E.D. Pa. Aug. 7, 2019); *Shaw, et al. v. AMN Servs., LLC*, No. 3:16-cv-02816 (N.D. Cal. May 31, 2019) (conducting lodestar cross check and holding "[t]he Court further finds that the hourly rates of Class Counsel's co-counsel, Berger Montague PC, also are within the prevailing range of hourly rates charged by attorneys providing similar services in class action, wage-and-hour cases"); *Scolaro v. RightSourcing, Inc.*, No. 8:16-cv-01083 (C.D. Cal. June 26, 2017) (approving Berger Montague's hourly rates); *Lopez v. T/J Inspection, Inc.*, No. 5:16-cv-148 (W.D. Okla. April 12, 2017); *Devlin v. Ferrandino & Son, Inc.*, No. 15-4976, 2016 WL 7178338, at *2 (E.D. Pa. Dec. 9, 2016) (approving billing rates, and holding Berger Montague attorneys "have substantial experience in FLSA cases and their hourly rates are also within the range charged by

8

attorneys with comparable experience levels for litigation of a similar nature."). *Fenley v. Applied Consultants, Inc.*, No. 2:15-cv-259-MRH (W.D. Pa. June 17, 2016); *Dunkel v. Warrior Energy Serv., Inc.*, No. 2:13-cv-695-MRH (W.D. Pa. Apr. 15, 2016); *Niver v. Specialty Oilfield Sols.*, No. 14-1599-JFC (W.D. Pa. Oct. 7, 2015); *Ciamillo v. Baker Hughes, Inc.*, No. 3:14-cv-00081-RRB (D. Alaska June 19, 2015); *Thompson v. Peak Energy Servs. USA, Inc.*, No. 13-cv-266 (W.D. Pa. Nov. 19, 2014); *Hively v. Archer Well Co., Inc. et al.*, No. 13-cv-106 (W.D. Pa. Aug. 12, 2014); *Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013); *Crawford v. Zenta Mortg. Servs. LLC,* No. 3:11-cv-129 (W.D.N.C. Jan. 16, 2013); *Bearden v. Precision Air Drilling Servs., Inc.*, No. 2:11-cv-01511-NBF (W.D. Pa. Sept. 26, 2012); *Thomas v. Allis-Chalmers*, No. 2:10-cv-01591-RCM (W.D. Pa. Sept. 11, 2012); *Choul v. Nebraska Beef, Ltd.*, No. 8:10-cv-308 (D. Neb. May 17, 2012).

25. In my best estimation, the time reflected above was time actually spent, in the exercise of reasonable judgment, by the attorneys and staff involved. Counterclaim Plaintiff's Counsel was careful not to expend unnecessary hours and not to duplicate work done by others. The time submitted herein reflects only work done on behalf of the Settlement Collective Members.

26. As reported above, and based also on the Declaration of Counterclaim Plaintiff's Counsel William Hommel and Ryan Allen Hancock and submitted in support of this Motion, Counterclaim Plaintiff's Counsel have spent more than 600 hours prosecuting this litigation since our investigation first began. Counterclaim Plaintiff's Counsel's current lodestar is more than $300,000. This is significantly less than the requested attorneys' fees, and does not include the additional work that will be necessary to bring this settlement to a conclusion. This factor further supports the requested fee.

**SUMMARY OF WORK PERFORMED UNDER MY DIRECT SUPERVISION**

27. I was the lead attorney with respect to this case. I directed the work of the other attorneys at both my old and new firm, conducted a legal analysis of the facts presented by this case, worked with co-counsel, and was the lead attorney in corresponding and conferring with opposing counsel throughout the litigation and settlement. In this capacity, I: 1) conducted the initial case investigation; 2) oversaw, managed, assigned and coordinated duties of a team of attorneys throughout this litigation; 3) devised and implemented strategy and participated in meetings and numerous telephone conferences with Southern Star and Amazon's counsel related to the litigation and settlement; 4) worked with Krysten Connon on strategy and briefing relating to the issues of arbitration and retaliation; 5) performed and directed the damages analyses in preparation for mediations; 6) was the lead attorney at the Parties' mediation sessions; 7) negotiated the details and terms of the Settlement Agreement; 8) edited, and finalized the Settlement Agreement; 9) drafted status reports to the Court; and 10) edited and drafted a number of the briefs in this case.

28. Below, I provide a summary description of the work performed by each of the attorneys or staff on this case who billed at least ten hours on this matter.

29. Krysten Connon was the primary associate on this matter. Ms. Connon was integrally involved in the strategy of this litigation, and was the primary drafter of the pleadings in the matter. In addition, she researched relevant issues for litigation, reviewed and prepared documents for mediation, prepared for and participated in mediation discussions, and actively participated in the mediation sessions.

30. Phyllis Parker performed research assignments in this case and drafted the first draft of the mediation statement.

31. Alex Piazza conducted research in connection with briefing the motion to dismiss in this action, drafted the motion for approval, participated in case planning and attended both mediations.

32. Deanna Kemler prepared and calculated the damages analyses and assisted in various projects relating to the calculation of damages. Stefana Klipa also performed paralegal work and engaged in damages calculations in this matter, and communicated with Mr. Page throughout the litigation.

### COUNTERCLAIM PLAINTIFF'S COUNSEL'S EXPENSES

33. This litigation required the law firms to advance costs of litigation. Because the risk of advancing costs in this type of litigation is significant, doing so is often cost prohibitive to many attorneys.

34. Berger Montague expended costs in the amount of $9,846.63 to prosecute this action, as follows:

| Expense | Amount |
|---|---|
| Conference Call/Telephone | $50.16 |
| Computer Research | $1,274.78 |
| Copying | $5.40 |
| Postage, Delivery & Freight | $21.69 |
| Mediation Fees | $8,500 |
| **Total** | **$9,846.63** |

35. As reported above, and based also on the Declaration of Ryan Allen Hancock submitted in support of this Motion, Counterclaim Plaintiff's Counsel has spent a total of approximately $10,065.57 in out-of-pocket expenses prosecuting this litigation since our investigation first began.

36. The expenses incurred pertaining to this case are reflected in the books and records of this firm. These books and records are prepared from expense vouchers and check records and

11

are an accurate record of the expenses incurred. All of the expenses incurred were reasonable and necessary to the prosecution of this case.

Dated: March 26, 2021

Sarah R. Schalman-Bergen